UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal No. 1:20-cr-10153-IT |
| BRYAN MILEIKIS, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER
June 7, 2021

TALWANI, D.J.

Defendant Bryan Mileikis is charged with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Indictment [#18]. Presently before the court is Defendant's Motion to Suppress and Request for a Franks Hearing [#40]. For the reasons that follow, the Motion [#40] is DENIED.

I. Procedural History

On June 10, 2019, on the government's applications for search warrants targeting (1) a home in Bourne, Massachusetts, (2) a red Ford pickup truck, and (3) Mileikis' person, the Magistrate Judge found there was probable cause both to believe a crime had been committed and that evidence of that crime would be found in the locations specified and issued the search warrants. Def.'s Mem. of Law Submitted in Support of the Def.'s Mot. to Suppress and Request for a Franks Hearing ("Mem. in Support of Mot. Suppress") 2 [#41]; see also Gov.'s Omnibus Response to Def.'s Mot. to Suppress Evidence and Request for a Franks Hearing ("Response") 1-2, 5 [#44]; DeFreitas Affidavit in Support of an Application for a Search Warrant ("DeFreitas Aff.") ¶ 2 [#40-5]; see also Search and Seizure Warrants [#44-1], [#44-2], [#44-3]. On June 11,

2019, the search warrants were executed and evidence, including two computers, an iPhone X, and two other phones, was seized. Mem. in Support of Mot. Suppress 2 [#41]; Response 2, 6 [#44].

On June 30, 2020, on the government's application for a criminal complaint and arrest warrant, Defendant was charged by criminal complaint. Aff. in Support of Application for Criminal Complaint and Arrest Warrant [#40-7]; Mem. in Support of Mot. Suppress 2 [#41]; Response 2, 6 [#44]; Complaint [#3]. On August 13, 2020, Defendant was indicted on two child pornography counts. Indictment [#18].

Presently before the court is Defendant's Motion to Suppress and Request for a Franks Hearing [#40]. Defendant seeks an order suppressing evidence seized from searches conducted pursuant to search warrants he argues were not supported by probable cause.

The court heard oral argument on the Motion [#40] on June 2, 2021.

## II. The Search Warrant Applications

Jason DeFreitas ("DeFreitas"), a Special Agent with Homeland Security Investigations ("HSI"), submitted an affidavit and a still image captured from a video to the Magistrate Judge in support of the three search warrant applications. The following information was set forth in the affidavit.

DeFreitas has been a special agent with the Department of Homeland Security's Immigration and Customs Enforcement's Homeland Security Investigations since 2006. DeFreitas Aff. ¶ 1 [#40-5]. At the time of this investigation, DeFreitas was assigned to the Cyber Group and had investigated and assisted other agents in investigating cases of "fraud, intellectual property rights, cultural property theft, and child pornography." Id.

The investigation of Defendant started after Kik Messenger ("Kik"), "a mobile application designed for chatting or messaging," id. at ¶ 5, was alerted to a suspected child pornography video on its platform. Id. at ¶ 10. Kik is located in Ontario, Canada, and is governed by Canadian law. Id. at ¶ 8. Kik's Terms of Service prohibit Kik users from uploading, posting, sending, commenting on, or storing content that contains child pornography and/or child abuse images. Id. at ¶ 7. Kik is mandated to report to the Royal Canadian Mounted Police ("RCMP") any images and/or videos that are discovered on the Kik platform and suspected to be child pornography under Canadian law. Id. at ¶ 8.

Once the RCMP receives a report from Kik concerning suspected child pornography, the RCMP reviews the reported internet protocol ("IP")[1] address of the Kik user associated with the suspected child pornography to determine the user's location. Id. at ¶ 9. If the user's IP address is determined to be in the United States, the RCMP provides the Kik report to HSI who sends the Kik report to Cyber Crimes Center Child Exploitation Investigations Unit for analysis. Id.

On January 6, 2019, Kik was alerted to a suspected child pornography video (the "video") on its platform. Id. at ¶ 10. In response, Kik compiled a report (the "Kik report"), dated January 7, 2019. Id. The Kik report stated that between November 13, 2018, and January 7,

---

[1] An IP address "refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses. IP addresses can be 'dynamic,' meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be 'static,' if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times." DeFreitas Aff. ¶ 13 n.2 [#40-5].

2019, a Kik user with the username "clm8705_qf8," who signed up for the account with the name Ryan Charles, a 1987 birth year, and used an iPhone to access Kik, used Kik to send the video. Id. Kik sent the Kik report and the video to the RCMP and after the RCMP determined clm8705_qf8's IP address was in the United States, the RCMP sent the video to HSI. Id. at ¶ 11.

DeFreitas viewed the video on May 6, 2019,[2] and provided a factual description in his Affidavit [#40-5] as detailed further below.

The Kik report included the IP address used by clm8705_qf8 on January 6, 2019, to send the video; the Kik report also stated that clm8705_qf8 used two other IP addresses to access Kik during the month clm8705_qf8 sent the video. Id. at ¶ 13.

The IP address used to send the video was registered to Comcast Cable Communications and the response to an administrative subpoena provided a Bourne, Massachusetts address associated with the Comcast account holder. Id. at ¶ 15. Another one of the IP addresses used by clm8705_qf8 to access Kik was registered to Verizon Wireless, and the response to the Verizon administrative subpoena indicated this IP address belonged to a subscriber listing the same Bourne, Massachusetts address associated with the Comcast account. Id. at ¶ 16.

Investigators also learned that Defendant's vehicle, a red Ford pickup truck, was registered at the same Bourne address and that Defendant was using the Verizon telephone number associated with one of the IP addresses used by clm8705_qf8. Id. at ¶¶ 16, 21.[3]

[2] The video "had previously been located, isolated, searched, and viewed by Kik personnel before it was reported to RCMP. [DeFreitas] reviewed only the video previously located, isolated, searched, and viewed by Kik personnel." DeFreitas Aff. ¶ 11 [#40-5].

[3] Investigators were able to confirm the phone number Defendant used because, at the time of this investigation, Defendant was under the supervision of U.S. Probation and Pretrial Services

The DeFreitas Affidavit [#40-5] also included characteristics of child pornography offenses and investigations based on DeFreitas' previous investigative experiences. Specifically, DeFreitas described how individuals who possess child pornography typically store, access, conceal, and share images and videos, see id. at ¶ 22, and the characteristics common to people who consume child pornography, for example, where they keep child pornography (in their residence or in cloud-based storage) and how forensic tools are sometimes required to locate deleted or hidden files. Id. at ¶ 23.

There were documents attached to the DeFreitas Affidavit [#40-5] describing Mileikis and the residence and vehicle to be searched, id., Attachment A USAO 0035-USAO 0037, and the sorts of items that would be seized, including records and tangible objects relating to child pornography and child erotica, computer hardware and software, and computer related documentation and/or storage media. Id., Attachment B USAO 0038-USAO 0041.

III.     Discussion

Defendant attacks the Magistrate Judge's probable cause finding on multiple fronts: (1) because the affiant lacked (or neglected to state his) experience with child pornography investigations, the opinions and beliefs expressed in the affidavit lack authority, Mem. in Support of Mot. Suppress 13-14 [#41]; (2) because the affiant failed to explain what a Kik "abuse report" was and failed to include information about how Kik is otherwise alerted to the presence of suspected child pornography on its platform, the affiant prevented the Magistrate Judge from "independently assess[ing] the facts," id. at 14-18; (3) because another HSI agent concluded,

---

following a 2011 conviction for two counts of armed bank robbery. DeFreitas Aff. ¶ 20 [#40-5]. Defendant was released from Bureau of Prisons custody in December 2018. Id.

after a forensic examination, that the video did not meet the statutory definition of child pornography, the affiant's statements to the contrary were misleading and/or reckless, id. at 18-23; and (4) because the Magistrate Judge viewed a still image from the video and not the video itself, she did not "independently assess the evidence." Id. at 24-26. Defendant also argues that the various alleged omissions and misrepresentations "implicate the very truthfulness, not just the sufficiency, of [the] warrant application" and entitle him to a Franks v. Delaware evidentiary hearing. Id. at 29.

The government argues there was no Fourth Amendment violation because the search warrants were supported by probable cause as asserted in the affidavit and the Magistrate Judge independently found there was probable cause to believe the image depicted a minor engaging in sexually explicit conduct. Response 7, 13 [#44]. The government also argues that even if the warrants were not supported by probable cause, the Leon good faith exception applies and precludes suppression of any evidence seized in reliance on the warrants. Id. at 7. The government argues finally that Defendant has failed to make the showing required for a Franks hearing. Id. at 19-20.

    1.  Legal Standard

The Fourth Amendment of the Constitution of the United States protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed - - the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched - - the so-called 'nexus element." United States v. Anzalone, 923 F.3d 1, 4 (1st Cir. 2019) (citing United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)). A

probable cause determination is "'a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); see also United States v. Moore, 790 F.2d 13, 15 (1st Cir. 1986) (same). Probable cause "does not demand certainty, or proof beyond a reasonable doubt, or even proof by a preponderance of the evidence." United States v. Rivera, 825 F.3d 59, 63 (1st Cir. 2016); see also Florida v. Harris, 568 U.S. 237, 244-45 (2013) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable cause] decision.") (internal citation and quotation omitted).

When reviewing a magistrate judge's determination that sufficient probable cause existed, courts are to be deferential:

> after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.

Gates, 462 U.S. at 236 (internal citation and quotation omitted). "[D]oubtful or marginal cases should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965).

A magistrate judge may err by authorizing a warrant in a child pornography investigation without independently viewing the suspected images or, at a minimum, reviewing "a reasonably specific description" of the images. United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001); see also United States v. Burdulis, 753 F.3d 255, 260-61 (1st Cir. 2014) ("[W]e have cautioned that courts should generally not approve a warrant to search for child pornography based solely

on a police officer's assertion that images he has seen but has not shown to the magistrate constitute such pornography.") (citation omitted).

Defendants requesting a Franks v. Delaware hearing "must make a 'substantial preliminary showing' that the affidavit included a false statement which was made either knowingly and intentionally or with reckless disregard for the truth, and that this misstatement was necessary to the finding of probable cause." United States v. Nelson-Rodriguez, 319 F.3d 12, 34 (1st Cir. 2003) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)); United States v. Adams, 305 F.3d 30, 36 n.1 (1st Cir. 2002)). "A material omission in the affidavit may also qualify for a Franks hearing in place of a false direct statement, provided the same requisite showing is made." Id. (citing United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993)); see also United States v. Fuccillo, 808 F.2d 173, 178 (1st Cir. 1987).

The First Circuit has stated that "[b]oth Franks and our own related precedent suggest that any suppression should be ordered only if the warrant application, cleansed of any false information or clarified by disclosure of previously withheld material, no longer demonstrates probable cause." United States v. Stewart, 337 F.3d 103, 105 (1st Cir. 2003) (citing Franks, 438 U.S. at 156).

2. Analysis

Defendant's arguments that the warrants were not supported by probable cause or that he is entitled to a Franks hearing are unpersuasive.

(a) Probable Cause Showing

The DeFreitas Affidavit [#40-5] asserted how HSI learned of the video, how investigators tracked the IP address associated with the account that used Kik to send the video, how they matched the IP address with a physical address and determined Defendant lived at that address,

and how they determined Defendant used a phone associated with another IP address connected to the Kik account that sent the video.

      DeFreitas provided a still image from the video and the following description of the video:

> the video distributed by clm8705_qf8 is approximately nine seconds in length and depicts a prepubescent, naked female child between the ages of 8-10 years old. The child is sitting on the floor, her breast exposed, with her legs spread open exposing her vagina. The child is repeatedly penetrating her vagina with an object.

Id. at ¶ 12. The Magistrate Judge reviewed both that factual description of the video and the still image from the video. This court has done so as well, and finds that the assertions in the DeFreitas Affidavit [#40-5], including the detailed description of the video, coupled with the still image from the video established probable cause to believe a crime, possession of child pornography, was committed, and that evidence of that crime would be found in the places to be searched. See Anzalone, 923 F.3d at 4-5.

      (b) The Magistrate Judge's Independent Assessment

      Defendant argues that the Magistrate Judge failed to independently assess probable cause. Defendant asserts that the Magistrate Judge should have viewed the video, not just the image, and that her failure to do so runs afoul of Brunette. Mem. in Support of Mot. Suppress 25-26 [#41]. In Brunette, the magistrate judge authorized a warrant but had not viewed the images and the affiant had not provided the magistrate judge with a specific description of the images. 256 F.3d at 16-17. The facts here are distinguishable where, consistent with the requirements set out in Brunette, a specific description of the video and an image from the video were both provided

to and reviewed by the Magistrate Judge. See United States v. Syphers, 426 F.3d 461, 466 (1st Cir. 2005).

              (c) Agent DeFreitas' Training and HSI Special Agent Plumb

Defendant points to HSI Special Agent Plumb's later conclusion that the video did not meet the definition of Category 1: Child Abuse Material and was instead Child Exploitive (non-Child Abuse Material)/Age Difficult, and Agent DeFreitas' lack of experience in child pornography investigations as undermining his conclusion that the "video is child pornography as defined by Federal Law." DeFreitas Aff. ¶ 11 [#40-5].[4] Courts must disregard legal conclusions of an affiant and look instead to the facts asserted to assess whether, given the totality of the circumstances, there is a fair probability a crime was committed. Cf. Brunette, 256

---

[4] Child Exploitive/Age Difficult Material includes:

> [a]ny material which when viewed on its own without reference to other materials does not meet the definition of [Child Abuse Material]. This category is used for material which indicates the exploitation of a child but does not meet the legal definition of child pornography. In addition, age difficult and questionable material will be placed here.

Child Abuse Material (CAM) includes:

> [m]aterial meeting the statutory definition of 18 U.S.C. [§] 2256(8)—Content that depicts children engaged in sexually explicit conduct and/or the lewd and lascivious display of genitalia. 'Child pornography' means any visual depiction, including photography, film, video, picture depicting sexually explicit conduct. 'Sexually explicit conduct' means material depicting any person under the age of 18 years engaged in graphic intercourse, including genital-genital, oral-genital, anal-genital, oral-anal whether between persons of the same or opposite sex, lascivious simulated sexual intercourse where the genitals, breast or pubic area of any person is exhibited. In addition[,] any material depicting a minor involved in bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area.

Summary of Findings of iPhone X USAO 0290 [#40-10].

F.3d at 18. As set forth above, the court is satisfied that the Magistrate Judge made such an independent assessment here; neither DeFreitas' alleged lack of experience in concluding that the video was child pornography nor Plumb's opposite conclusion is relevant to the Magistrate Judge's independent assessment.

        (d) The Kik Report

Defendant argues the fact the video was detected through an "abuse report" and not one of Kik's identified means of detecting child pornography, and the affiant's failure to define "abuse report" undermines the probable cause finding. Defendant explains that Kik's Glossary of Terms' [#40-9] definition of "abuse report" makes no mention of pornography:

> Kik allows users to report other users who have abused or harassed them within the app. When a Kik user reports another user, they have the option to include their full conversation history, including text, and any images or videos sent between them. When [Kik's] content moderators have found this content to contain reference to illegal activity, the Trust and Safety team is alerted and receives a copy of the full set of content. The Trust and Safety team has a mandatory obligation to report the incident to the Royal Canadian Mounted Police.

Mem. in Support of Mot. Suppress 15-16 [#41]. Defendant explains that under Kik's policies, it is alerted to the presence of suspected child pornography on its platform (1) when there is a digital hash value match between an image or video on Kik and the digital hash value of previously identified child pornography; (2) when users report suspected child pornography on the platform; and/or (3) when third-party moderators report suspected child pornography on the platform. DeFreitas Aff. ¶ 8 [#40-5]. But regardless of how the video came to Kik's attention, Defendant makes no claim of any violation of his rights by Kik's alerting the Royal Canadian Mounted Police about the video, or the Royal Canadian Mounted Police notifying its law enforcement counterparts in the United States about the video.

Moreover, the means by which the video was reported are irrelevant where the Magistrate Judge viewed a still from the video and made an independent determination there was probable cause. Further explanation of the various means by which child pornography is detected on Kik and/or the fact that "abuse reports" may typically be used to report harassment on the platform does not change the probable cause determination.

    (e)  Franks hearing

Defendant argues the DeFreitas Affidavit [#40-5] omitted information and that the affiant exhibited reckless disregard in submitting the affidavit. Mem. in Support of Mot. Suppress 29 [#41]. After reviewing the alleged omissions, the court is satisfied that had the affiant included this information the search warrants would still have been supported by probable cause.

If DeFreitas included information about how "abuse reports" are generated on Kik and/or that Kik learned of the video from a Kik user instead of a Kik moderator or Kik algorithm there would still be probable cause to believe the crime of possession of child pornography was committed. This information also would not have changed the Magistrate Judge's finding, after reviewing a still from the video, that there was probable cause to believe the "image depicts a minor engaging in sexually explicit content." DeFreitas Aff. USAO 0034 [#40-5].

Defendant has presented no information suggesting DeFreitas acted knowingly, intentionally, or with reckless disregard for the truth when he described the video as child pornography and/or left out the definition of "abuse reports" or the other ways child pornography was reported on Kik. That the video was later classified by Agent Plumb as child exploitive does not mean, at the time the warrant was issued, there was not probable cause. See United States v. Castillo, 287 F.3d 21, 25-26 (1st Cir. 2002) (finding defendant failed to make a "substantial preliminary showing" of intentional or reckless omission where the substance described in the

search warrant affidavit was later determined to not be drugs, where there was no evidence the affiant knew, or had reason to know, the substance was not drugs when he submitted the affidavit).

Because Defendant has failed to make a substantial preliminary showing that the omissions and misstatements he identified were made knowingly and intentionally or with reckless disregard for the truth and were necessary to the finding of probable cause he is not entitled to a Franks v. Delaware evidentiary hearing. Castillo, 287 F.3d at 25 (citing Franks, 438 U.S. at 155-56).

IV. Conclusion

Accordingly, for the aforementioned reasons, Defendant's Motion to Suppress and Request for a Franks Hearing [#40] is DENIED.

IT IS SO ORDERED.

Date: June 7, 2021 /s/ Indira Talwani
United States District Judge